IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>LEE COBB,<br><br>    Defendant. | No. CR06-3071-MWB<br><br>**REPORT AND RECOMMENDATION<br>ON MOTION TO SUPPRESS** |

_____

On January 24, 2007, the grand jury returned a Superseding Indictment charging the defendant Lee Cobb with conspiracy to distribute anabolic steroids, distribution of anabolic steroids, and possession with intent to distribute anabolic steroids, as well as conspiracy to conduct illegal financial transactions relating to the distribution of anabolic steroids. *See* Doc. No. 24, Superseding Indictment. On February 7, 2007, Cobb filed a motion to suppress and application for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Doc. No. 38. The plaintiff (the "Government") resisted the motion on February 15, 2007. Doc. Nos. 42 & 52.

The trial management order in this case assigned motions to suppress to the undersigned for consideration, the holding of any necessary hearings, and the filing of a report and recommended disposition. Doc. No. 10, § IV.A. Accordingly, the court held a hearing on the motion on March 6, 2007, at which Assistant U.S. Attorney C.J. Williams represented the Government, and Cobb was present in person with his attorney, John Keith Rigg. The Government offered the testimony of Mason City Police Officer Logan Wernet, and Cerro Gordo County Deputy Sheriff Matt Klunder. The court admitted into evidence two exhibits, to-wit: Gov't Ex. 1, Application for Search Warrant, and Search Warrant, dated May 2, 2006, with attachments (11 pages); and Gov't Ex. 2,

an undated memo from Officer Klunder to C.J. Williams (1 page).  Subsequent to the hearing, Cobb supplemented his motion with additional authorities.  Doc. No. 54.

The court finds the motion is fully submitted and ready for decision.

## *FACTUAL BACKGROUND*

In his motion Cobb challenges a search warrant that was issued for a search of his residence in Mason City, Iowa.  He argues the application for the search warrant contained materially false statements of fact, and that without those falsehoods, there was no probable cause to support the search warrant.  The following factual background, taken from the hearing testimony and exhibits, sets forth the information known to law enforcement officers at the time they applied for the search warrant of Cobb's residence.

During the time period relevant to Cobb's motion, Officer Logan Wernet was assigned to the North Central Iowa Narcotics Task Force (the "Task Force").  He was based in Mason City, Iowa, where he was involved in an investigation of steroid trafficking in the Mason City area.  He testified that in early 2006, he received an anonymous letter in the mail stating that Cobb was involved in distributing steroids.  The letter cited a couple of different web sites from which Cobb allegedly was doing business.[1]  At roughly the same time, the Task Force received information from employees at a K–Mart store in Mason City, who were concerned about large wire transfers of cash by Joseph Upshaw.[2]

To assist in the ongoing investigation, the Cerro Gordo County Sheriff assigned Deputy Matt Klunder to the Task Force as an investigator.  Wernet assisted Klunder in obtaining several subpoenas and in putting together a case file.  The officers subpoenaed

---

[1] Wernet did not testify that any follow-up was done regarding the web sites cited in the anonymous letter.

[2] Upshaw is a codefendant in the present action.

wire transfer records from Western Union that showed Upshaw was sending large amounts of cash to China. Klunder testified China is a known source of steroids that are imported into the United States.

Beginning in February 2006, the officers conducted a "mail cover" of Cobb's residence. Wernet testified a mail cover is when someone looks at each piece of mail that comes through to a particular address. On or about March 20, 2006, the officers became aware of a mailing[3] from a Clinton Barger in Tennessee[4], addressed to "GC Nutrition" at Cobb's address in Mason City. Wernet testified he is familiar with Cobb's neighborhood because he drives past the area frequently. Cobb's residence is a single-family, ranch-style dwelling. Wernet was not aware of any business being conducted out of Cobb's residence, and he had not seen any traffic to and from the residence to suggest a business was being conducted there. In addition, he believed Cobb had a job "doing maybe construction work or heating and air-conditioning work, something to that effect." Tr. p. 31, lines 21-23.[5] To Wernet, these facts indicated GC Nutrition was "fictitious." However, Wernet also testified he had done no investigation to determine whether or not GC Nutrition was a legitimate business entity. Tr. p. 20, lines 11-13. He did not consider that Cobb might be operating a legitimate business from his residence, and "only considered [Cobb] was selling steroids through the mail[.]" Tr. p. 20, lines 6-10.

On May 1, 2006, officers were contacted by a UPS employee in Mason City, Iowa, about a suspicious package that had been delivered to UPS for shipment to Nashville,

---

[3]Wernet testified the piece of mail was a letter, while Klunder testified it was a package. *Compare* Tr. p. 8, l. 20 *with* Tr. p. 40, l. 21. For purposes of Cobb's motion to suppress, the court finds that whether the mailing was a letter or a package is irrelevant.

[4]Wernet testified the letter to GC Nutrition came from Nashville, Tennessee, and it was his understanding that Barger resided in Nashville. (Tr. p. 10, lines 22-25; p. 28, lines 9-13) The warrant affidavit indicates Barger is from Clarksville, Tennessee. (*See* Gov't Ex. 1)

[5]Klunder testified that to his knowledge, Cobb was employed at Kraft Foods in Mason City. Tr. p. 40, l. 9.

Tennessee. Because of poor packaging, UPS employees had opened the box to repackage its contents. Inside the box, they had discovered four shrink-wrapped packages containing vials and pills. The box bore Joseph Upshaw's name and return address, and was addressed to an individual by the name of Forrest Yeats at a Nashville, Tennessee, address. Wernet went to the UPS store to view the box's contents. Based on his training and experience, he observed that the way the vials and pills were packaged was consistent with the way he had seen steroids packaged.

The officers made contact with law enforcement in Nashville, Tennessee, and arranged for a controlled delivery of the package to Yeats, the addressee. On May 2, 2006, Wernet received a phone call from Sgt. Meckall,[6] an officer with the Nashville Police Department's drug unit.[7] Meckall reported that they had completed the controlled delivery of the package to Yeats, and they were executing a search warrant of Yeats's residence and interviewing Yeats. According to Meckall, Yeats admitted he had purchased the steroids in the package from an Iowa source, and he told the Nashville officers he had previously purchased steroids from someone in Iowa using a middleman. The Tennessee investigation yielded no evidence linking Cobb to the package Upshaw sent to Yeats in Tennessee. *See* Tr. pp. 17-18.

Klunder, assisted by Wernet, applied for, received, and executed a search warrant for Upshaw's residence. During the search, officers located several items consistent with the sale of steroids. They found no documents during the search to connect Upshaw with Cobb. *See* Tr. p. 16, lines 16-19.

---

[6]Wernet and Klunder both testified they had some difficulty understanding Meckall at times, due to his heavy southern drawl. The court finds this fact to be irrelevant in the context of the present motion.

[7]Wernet initially testified he received the call from Meckall while he was assisting in execution of the search warrant at Upshaw's residence. He later stated that was incorrect, and he actually had been in his office when he received the call.

4

All of the facts to this point are uncontested for purposes of Cobb's motion. To summarize, the uncontested facts show (1) officers received an anonymous letter stating Cobb was involved in distributing steroids; (2) a mail cover revealed that a single piece of mail from a "Clinton Barger" in Tennessee was sent to "GC Nutrition" at Cobb's residential address; (3) officers were not aware of any information suggesting a business was being operated out of Cobb's residence, although they actually had not investigated this possibility: (4) officers discovered that Upshaw had sent, via wire transfers, large amounts of cash to China, a known source of illegal steroids; (5) Upshaw shipped a package containing steroids to Yeats in Tennessee; and (6) Yeats admitted he had purchased the steroids from an Iowa source using a middleman.

The court finds that based on these facts alone, probable cause was not present to support a warrant to search Cobb's residence. The direct evidence does not establish any connection between Cobb and the shipment of steroids from Upshaw to Yeats. The only inferential evidence to support such a connection is the following: (1) the Task Force received an anonymous letter stating Cobb was involved in distributing steroids; (2) Upshaw sent steroids from Iowa, to Yeats in Tennessee; (3) Yeats told law enforcement he had purchased steroids from Iowa using a middleman; and (4) Cobb had received mail from a "Clinton Barger" in Tennessee. This evidence establishes, at most, only the remote likelihood of a connection between Cobb and Upshaw's shipment to Yeats. This inference falls far short of probable cause.

However, the warrant to search Cobb's residence was not based on these facts alone, but also on additional information. The issue raised by the motion to suppress is whether the additional information contained in the warrant application established probable cause to support the issuance of the warrant.

In his affidavit in support of the warrant application, Klunder stated as follows:

> In February of 2006, the North Central Iowa Narcotics
> Task Force began an investigation into the possession and sale

of illegal steroids by Lee Jay Cobb, who resides at [address omitted], in Mason City. The task force received information that Cobb is selling steroids and is an accomplice of Joseph Randall Upshaw. A mail cover was ordered through the United States Postal Service and information has been received on the mail cover.

On May 1, 2006, the task force responded to UPS in Mason City, where a package was being sent by Joe Upshaw. The package was opened by employees of UPS. Inside the package were four shrink wrapped packages of suspected steroids, including vials of liquid and capsules of white substance. The package was being sent to Nashville, TN. We made contact with Investigators in Tennessee and a controlled delivery was set up through UPS. On May 2, 2006, investigators in Nashville, TN called with information. The delivery was completed and they were conducting a search warrant. The Investigators in Tennessee told Investigator Logan Wernet that they interviewed the male subject and he supplied them with some information. We were told that Forrest Yeats, the male in Tennessee admitted to having the steroids delivered and was paying over $2,000 for them. Yeats told the investigators that he uses a middle man by the name of Clinton Barger, of Clarksville, TN. According to Yeats, Barger collects the cash from Yeats and sends it to his source of the steroids, and then the steroids are sent to Yeats.

During the US Postal mail cover of Lee Cobb's residence, a package was received at [the residence] on 03/20/06. The package was addressed to GC Nutrition and was sent by Clinton Barger, the subject that Yeats stated he pays to have the steroids sent. It is believed that this package contained the cash for a steroid transaction. It is believed that Cobb and Upshaw are in a conspiracy together to distribute steroids nationwide.

On May 2, 2006, the task force executed a search warrant at Upshaw's residence and located several items consistent with the sale of steroids, including items similar to what were sent through UPS on May 1, 2006. We believe more items are located at Cobb's residence. The address listed has been verified through Cobb's information in the County

6

> computers, along with through his listing in the County
> Assessor's Office. I also know that Cobb lives there through
> personal experience. I am therefore requesting issuance of this
> search warrant to locate any or all of the items listed in the
> application.

Gov't Ex. 1.

The first statements at issue in the affidavit are Klunder's representations that Cobb and Upshaw were working together to distribute steroids. In the first paragraph, Klunder indicated the Task Force had "received information that Cobb is selling steroids and is an accomplice of Joseph Randall Upshaw." In the second paragraph, he stated, "It is believed that Cobb and Upshaw are in a conspiracy together to distribute steroids nationwide." Wernet testified he reviewed the search warrant application before it was submitted to the judge, he could have corrected any information he thought was incorrect, and all of the information contained in the application was accurate, to the best of his knowledge. Tr. pp. 15-16; p. 29, lines 1-18. However, Wernet further testified that at the time the warrant was obtained, he was not aware of any information indicating Cobb and Upshaw were accomplices in steroid trafficking. Tr. p. 21, lines 2-12. Klunder, on the other hand, testified he received the information that Cobb and Upshaw were working together to distribute steroids from Wernet. Tr. pp. 38-39, 47-48; *see also* Tr. p. 60, lines 4-16.

The court concludes Klunder's statement in the affidavit that the Task Force had information indicating Cobb was "an accomplice of Joseph Randall Upshaw" is false. The statement that officers "believed" Cobb and Upshaw were co-conspirators in distributing steroids nationwide is a closer call, given that it sets forth the officers' "belief," which is a subjective determination. However, because the statement is offered in support of a search warrant application, and the belief is based on the other partially-false information in the warrant, the court also finds this statement to be false. The consequences of

7

including these false statements in the warrant application are addressed later in this opinion.

The next statement at issue in the affidavit is Klunder's representation that Yeats had identified his middleman as Clinton Barger, of Clarksville, Tennessee. Wernet testified that when he received the call from Meckall on May 2, 2006, Meckall told him Yeats had stated "he used a middleman that he met at a local gym there to arrange for the steroids to be delivered," and Yeats identified the middleman as Clinton Barger, from Nashville, Tennessee.[8] Tr. p. 13, lines 11-21; p. 28, lines 9-13. Wernet stated he took this information "next door to Klunder's office and relayed it to him where he was going to type the search warrant up." Tr. p. 14, lines 21-24. The evidence indicates Meckall has stated Yeats never identified his middleman by name, and Meckall maintains he did not tell Wernet the name of any middleman. Wernet disputes this, stating it was his "understanding in talking to [Meckall] that the middleman was Clinton Barger." Tr. p. 23, lines 1-2; *see* Tr. p. 29 lines 19-24. Wernet made the connection between the name Clinton Barger and the return address on the piece of mail sent from Tennessee to "GC Nutrition" at Cobb's address. Wernet acknowledged that if Meckall did not provide the name Clinton Barger as Yeats's middleman, there was no evidence to tie Yeats to Cobb at the time of the search warrant application.[9] Tr. pp. 23-24.

Klunder testified he prepared the search warrant affidavit based on information provided to him by Wernet. Klunder had never spoken with Meckall prior to preparing the warrant affidavit. He called Meckall about a week after the search of Cobb's residence, and Meckall stated Yeats "had spoken of a middleman, but had not given

---

[8] Wernet later stated Meckall could have told him Barger was from Clarksville, Tennessee, rather than Nashville, and then he could not recall whether or not Barger's residence was mentioned at all. Tr. p. 28, lines 9-13, 19-25.

[9] Apparently, during a further search of Yeats's residence, a document was found later bearing the name GC Nutrition and Cobb's address. *See* Tr. p. 45, lines 14-19.

[Barger's] name." Tr. p. 44, lines 1-2. Klunder stated he was surprised when Meckall told him Yeats had not mentioned a name, but Meckall continued to maintain that no name was given. Tr. pp. 52-53. Klunder wrote a memo to Assistant U.S. Attorney C.J. Williams in which he relayed what he termed to be a miscommunication between himself and Wernet concerning the identity of Yeats's middleman. *See* Gov't Ex. 2. Klunder later reviewed police reports from the Tennessee officers' interviews with Yeats. Klunder stated the reports contained no mention of Clinton Barger, or of any middleman at all, nor did they mention that Yeats had met the middleman at a gym. Tr. p. 59, lines 1-4, 10-17.

Klunder indicated officers had not sought a search warrant for Cobb's residence previously because they had not located a connection between Cobb and Upshaw. The additional information that Clinton Barger was Yeats's middleman, coupled with the letter from Barger to GC Nutrition at Cobb's address, provided the link they needed to support the search warrant application. *See* Tr. pp. 49-50. Klunder testified that other than what Wernet told him about the connection between Yeats and Barger, he had no other information to connect the two. Tr. p. 61, lines 5-9.

The court finds Meckall did not provide Clinton Barger's name to Wernet. Rather, the court finds Wernet arrived, on his own, at the conclusion that Barger was Yeats's middleman. Wernet testified he was aware of Clinton Barger's name before he ever spoke with Meckall, due to Barger's return address on the piece of mail sent to GC Nutrition at Cobb's address. Tr. pp. 35-36. Whether intentionally or recklessly, Wernet jumped to the conclusion that Barger was Yeats's middleman for his purchase of steroids from an Iowa source. As a result, the information in the warrant application indicating Barger was "the subject that Yeats stated he pays to have the steroids sent," and the conclusory statement, "It is believed that this package [from Barger to GC Nutrition] contained the

9

cash for a steroid transaction," was false. The consequences of including these false statements in the warrant application are discussed below.

## *DISCUSSION*

The first issue before the court is whether Cobb has made the requisite showing for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Under *Franks*, the court is required to hold a hearing "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause[.]" 438 U.S. at 155-56, 98 S. Ct. at 2676. Further,

> [i]n the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 156, 98 S. Ct. at 2676. The same principles are true for material the defendant alleges was omitted from (rather than included in) a warrant affidavit.

Under *Franks*, before a defendant is entitled to a hearing, he must make a *substantial* preliminary showing that either relevant information was omitted from the affidavit, or false information was included in the affidavit, either intentionally or with reckless disregard for the truth. The substantiality requirement is not easily met. *See United States v. Hiveley*, 61 F.3d 1358, 1360 (8th Cir. 1995); *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987). When no proof is offered that an affiant deliberately lied or recklessly disregarded the truth, a *Franks* hearing is not required. *United States v. Williams*, 477 F.3d 554, 557-58 (8th Cir. 2007) (citing *Franks*); *U.S. v. Moore*, 129 F.3d

10

989, 992 (8th Cir. 1997). "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *Moore*, 129 F.3d at 992 (citing *Franks*, 438 U.S. at 171); *see United States v. Ketzeback*, 358 F.3d 987 (8th Cir. 2004);[10] *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986). The defendant also must show "that the allegedly false statement was necessary to a finding of probable cause or that the alleged omission would have made it impossible to find probable cause." *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998).

In the present case, the court finds Cobb made the requisite showing to warrant a *Franks* hearing. The evidence indicates the officers actually knew of *no* connection between Cobb and Upshaw, or between Upshaw and Barger. Further, as indicated above, the court finds Wernet communicated false information to Klunder that was included in the warrant application. If the false information regarding the connections between Cobb and Upshaw, and between Upshaw and Barger, is set to one side, "the affidavit's remaining content is insufficient to establish probable cause" for a search of Cobb's residence, and "the search warrant must be voided." *Franks*, 438 U.S. at 156, 98 S. Ct. at 2676.

The Government argues the affidavit contained sufficient information to establish probable cause. The Government first asserts the statement that Cobb and Upshaw were associated in selling steroids "should carry the weight of an anonymous tipster." (Doc.

---

[10]In *Ketzeback*, the court held:
> A facially valid warrant affidavit is constitutionally infirm if the defendant establishes the affidavit included deliberate or reckless falsehoods that, when redacted, render the affidavit's factual allegations insufficient to support a finding of probable cause. *Franks v. Delaware,* 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Omissions likewise can vitiate a warrant if the defendant proves "first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.'" *United States v. Allen,* 297 F.3d 790, 795 (8th Cir. 2002).

*Ketzeback*, 358F.3d 987, 990 (8th Cir. 2004).

11

No. 42-1, p. 10) However, the evidence indicates there *was no information* that Cobb and Upshaw were accomplices in distributing steroids, as confirmed by the officers' testimony at the hearing. The statement was nothing more than speculation, and cannot stand as a basis to support probable cause.

The Government further argues the allegation was corroborated "in several significant ways." *Id.* The only piece of corroboration that bears any relevance at all to the warrant application is the letter or package from Barger addressed to GC Nutrition at Cobb's address. Absent any connection between Barger and Yeats or Upshaw, this single item of mail proves almost nothing with regard to Cobb's alleged steroid trafficking.

Notably, it is irrelevant that Klunder may have acted in good faith in providing information in the affidavit that he believed to be true, based on what Wernet had told him. Wernet's misstatements cannot be insulated from a *Franks* challenge simply because they were relayed through Klunder. *United States v. Davis*, 471 F.3d 938, 947 n.6 (8th Cir. 2006) (citing *Franks*, 438 U.S. at 163 n.6, 98 S. Ct. at 2680 n.6, in which the Court held "police [may] not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity"); and *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997) (collecting cases)).

At the hearing, the Government also suggested that because, at some point subsequent to the search of Cobb's residence, a document was found at Yeats's residence bearing the name GC Nutrition and Cobb's address, the connection between Cobb and Yeats inevitably would have been discovered, and therefore, the warrant should not be set aside. *See* Tr. p. 45, lines 10-11. Neither party has briefed the issue, but the court addresses it here for the sake of completeness. The Eighth Circuit Court of Appeals has explained:

> To succeed under the inevitable-discovery exception to the exclusionary rule, the government must prove by a preponderance of the evidence: (1) that there was a reasonable

12

> probability that the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.
> *United States v. Wilson*, 36 F.3d 1298, 1304 (5th Cir. 1994).

*United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997) (following the holding in *Nix v. Williams*, 467 U.S. 431, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984)). The Eighth Circuit takes a "narrow view" of the inevitable discovery doctrine. *See United States v. Warford*, 439 F.3d 836, 844 (8th Cir. 2006) (citing *Conner*).

In the present case, the undersigned finds application of the inevitable discovery exception would be an unjustifiable stretch. No evidence was offered at the hearing regarding how much time elapsed between issuance of the warrant in question and discovery of the document connecting Yeats and Cobb. Although it is reasonable to assume that once the document was discovered, officers would have sought a warrant to search Cobb's residence, the court can only speculate as to what evidence might have been discovered in the residence at that point in time. The court finds the Government failed to carry its burden to support application of the inevitable discovery doctrine here.

The undersigned finds the officers' misstatements regarding an alleged connection between Cobb and Upshaw, and between Cobb and Barger, were made with reckless disregard for the truth. The court further finds that when the false statements are excluded, the information in the affidavit would not support a finding of probable cause for a search of Cobb's residence. As a result, Cobb's motion should be granted, and all evidence arising from the search of Cobb's residence, including Cobb's statements to officers during the search, should be suppressed. *Cf. United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 3421, 82 L. Ed. 2d 677 (1984) (good faith exception to warrant requirement does not apply if issuing judge was misled by false statements in affidavit that were made in reckless disregard for the truth).

13

## *CONCLUSION*

For the reasons discussed above, **IT IS RESPECTFULLY RECOMMENDED** that Bauer's motion to suppress be **granted**.

Any party who objects to this report and recommendation must serve and file specific, written objections by **April 2, 2007**. Any response to the objections must be served and filed by **April 6, 2007.**

IMPORTANT NOTE: The parties are alerted to the fact that the court reporter has prepared a transcript of that portion of the suppression hearing comprising the two witnesses' testimony. If either party believes the remainder of the transcript is necessary for the district court's review of this matter, the party is directed to order the remainder of the transcript promptly. **If an attorney files objections to this report and recommendation that include references to or discussion regarding matters raised at the hearing that have not been transcribed, the court may impose sanctions on the attorney.**

**IT IS SO ORDERED.**

**DATED** this 27th day of March, 2007.

*[signature: Paul A. Zoss]*

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

14