**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

LEE COBB,

          Defendant.

No. CR06-3071-MWB

**ORDER CONCERNING
MAGISTRATE'S REPORT AND
RECOMMENDATION REGARDING
DEFENDANT'S MOTIONS TO
SUPPRESS**

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   *A.  Standard Of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
   *B.  Objections To Findings Of Fact* . . . . . . . . . . . . . . . . . . . . . . . . . 11
      *1.  Connection between Barger and Yeats's middleman* . . . . . . 11
      *2.  Whether Wernet's action was intentional* . . . . . . . . . . . . . 12
      *3.  Whether Wernet acted recklessly* . . . . . . . . . . . . . . . . . . 12
      *4.  Connection between Cobb, Upshaw and Barger* . . . . . . . . . 14
      *5.  Corroboration of connection between Cobb and Upshaw* . . . . 15
      *6.  Belief that Cobb and Upshaw were accomplices* . . . . . . . . . 16
   *C.  Objections To Legal Conclusions* . . . . . . . . . . . . . . . . . . . . . . . . 16
      *1.  Substantial preliminary showing* . . . . . . . . . . . . . . . . . . 16
      *2.  Reckless disregard for the truth* . . . . . . . . . . . . . . . . . . . 21
      *3.  Probable cause absent the false information* . . . . . . . . . . . 21

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# I.  INTRODUCTION AND BACKGROUND

## A.  Procedural Background

On January 24, 2007, a superseding  indictment was returned against defendant Lee Cobb charging him with conspiracy to distribute anabolic steroids, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846, distributing anabolic steroids, in violation of of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), possessing anabolic steroids with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D), and money laundering in violation of 18 U.S.C. § 1956(h).  On February 7, 2007, defendant Cobb filed a motion to suppress and application for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  In his motion, defendant Cobb seeks to suppress evidence found during the execution of a search warrant that was issued for his residence in Mason City, Iowa. Defendant Cobb argues that the search warrant application contained materially false statements of fact, and that, absent those falsehoods, the search warrant application was not supported by probable cause.

Defendant Cobb's motion to suppress was referred to Chief United States Magistrate Judge Paul A. Zoss, pursuant to 28 U.S.C. § 636(b).  Judge Zoss conducted an evidentiary hearing and then filed a Report and Recommendation in which he recommends that defendant Cobb's motion to suppress be granted.  Judge Zoss concluded that defendant Cobb made the requisite showing to warrant a *Franks* hearing. Judge Zoss further concluded that one law enforcement officer communicated false information to another that was then included in the warrant application and that if the false information is set to one side, the affidavit's remaining content is insufficient to establish probable cause for a search of defendant Cobb's residence.  Therefore, Judge Zoss recommended that defendant Cobb's motion to suppress be granted.  The government has filed objections to Judge

2

Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Cobb's motion to suppress.

## B. Factual Background

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> During the time period relevant to Cobb's motion, Officer Logan Wernet was assigned to the North Central Iowa Narcotics Task Force (the "Task Force"). He was based in Mason City, Iowa, where he was involved in an investigation of steroid trafficking in the Mason City area. He testified that in early 2006, he received an anonymous letter in the mail stating that Cobb was involved in distributing steroids. The letter cited a couple of different web sites from which Cobb allegedly was doing business. At roughly the same time, the Task Force received information from employees at a K–Mart store in Mason City, who were concerned about large wire transfers of cash by Joseph Upshaw.

> To assist in the ongoing investigation, the Cerro Gordo County Sheriff assigned Deputy Matt Klunder to the Task Force as an investigator. Wernet assisted Klunder in obtaining several subpoenas and in putting together a case file. The officers subpoenaed wire transfer records from Western Union that showed Upshaw was sending large amounts of cash to China. Klunder testified China is a known source of steroids that are imported into the United States.

> Beginning in February 2006, the officers conducted a "mail cover" of Cobb's residence. Wernet testified a mail cover is when someone looks at each piece of mail that comes through to a particular address. On or about March 20, 2006, the officers became aware of a mailing from a Clinton Barger in Tennessee, addressed to "GC Nutrition" at Cobb's address in Mason City. Wernet testified he is familiar with Cobb's neighborhood because he drives past the area frequently.

3

Cobb's residence is a single-family, ranch-style dwelling. Wernet was not aware of any business being conducted out of Cobb's residence, and he had not seen any traffic to and from the residence to suggest a business was being conducted there. In addition, he believed Cobb had a job "doing maybe construction work or heating and air-conditioning work, something to that effect." Tr. p. 31, lines 21-23. To Wernet, these facts indicated GC Nutrition was "fictitious." However, Wernet also testified he had done no investigation to determine whether or not GC Nutrition was a legitimate business entity. Tr. p. 20, lines 11-13. He did not consider that Cobb might be operating a legitimate business from his residence, and "only considered [Cobb] was selling steroids through the mail[.]" Tr. p. 20, lines 6-10.

On May 1, 2006, officers were contacted by a UPS employee in Mason City, Iowa, about a suspicious package that had been delivered to UPS for shipment to Nashville, Tennessee. Because of poor packaging, UPS employees had opened the box to repackage its contents. Inside the box, they had discovered four shrink-wrapped packages containing vials and pills. The box bore Joseph Upshaw's name and return address, and was addressed to an individual by the name of Forrest Yeats at a Nashville, Tennessee, address. Wernet went to the UPS store to view the box's contents. Based on his training and experience, he observed that the way the vials and pills were packaged was consistent with the way he had seen steroids packaged.

The officers made contact with law enforcement in Nashville, Tennessee, and arranged for a controlled delivery of the package to Yeats, the addressee. On May 2, 2006, Wernet received a phone call from Sgt. Meckall, an officer with the Nashville Police Department's drug unit. Meckall reported that they had completed the controlled delivery of the package to Yeats, and they were executing a search warrant of Yeats's residence and interviewing Yeats. According to Meckall, Yeats admitted he had purchased the steroids in the

4

package from an Iowa source, and he told the Nashville officers he had previously purchased steroids from someone in Iowa using a middleman. The Tennessee investigation yielded no evidence linking Cobb to the package Upshaw sent to Yeats in Tennessee. *See* Tr. pp. 17-18.

Klunder, assisted by Wernet, applied for, received, and executed a search warrant for Upshaw's residence. During the search, officers located several items consistent with the sale of steroids. They found no documents during the search to connect Upshaw with Cobb. *See* Tr. p. 16, lines 16-19.
. . .
In his affidavit in support of the warrant application, Klunder stated as follows:

> In February of 2006, the North Central Iowa Narcotics Task Force began an investigation into the possession and sale of illegal steroids by Lee Jay Cobb, who resides at [address omitted], in Mason City. The task force received information that Cobb is selling steroids and is an accomplice of Joseph Randall Upshaw. A mail cover was ordered through the United States Postal Service and information has been received on the mail cover.
> On May 1, 2006, the task force responded to UPS in Mason City, where a package was being sent by Joe Upshaw. The package was opened by employees of UPS. Inside the package were four shrink wrapped packages of suspected steroids, including vials of liquid and capsules of white substance. The package was being sent to Nashville, TN. We made contact with Investigators in Tennessee and a controlled delivery was set up through UPS. On May 2, 2006, investigators in Nashville, TN called with information. The delivery was completed and they were conducting a search warrant. The Investigators in Tennessee told Investigator Logan Wernet that they interviewed the

5

male subject and he supplied them with some information. We were told that Forrest Yeats, the male in Tennessee admitted to having the steroids delivered and was paying over $2,000 for them. Yeats told the investigators that he uses a middle man by the name of Clinton Barger, of Clarksville, TN. According to Yeats, Barger collects the cash from Yeats and sends it to his source of the steroids, and then the steroids are sent to Yeats.

During the US Postal mail cover of Lee Cobb's residence, a package was received at [the residence] on 03/20/06. The package was addressed to GC Nutrition and was sent by Clinton Barger, the subject that Yeats stated he pays to have the steroids sent. It is believed that this package contained the cash for a steroid transaction. It is believed that Cobb and Upshaw are in a conspiracy together to distribute steroids nationwide.

On May 2, 2006, the task force executed a search warrant at Upshaw's residence and located several items consistent with the sale of steroids, including items similar to what were sent through UPS on May 1, 2006. We believe more items are located at Cobb's residence. The address listed has been verified through Cobb's information in the County computers, along with through his listing in the County Assessor's Office. I also know that Cobb lives there through personal experience. I am therefore requesting issuance of this search warrant to locate any or all of the items listed in the application.

Gov't Ex. 1.

The first statements at issue in the affidavit are Klunder's representations that Cobb and Upshaw were working together to distribute steroids. In the first paragraph, Klunder indicated the Task Force had "received information that Cobb is selling steroids and is an accomplice of Joseph Randall Upshaw." In the second paragraph, he stated, "It is believed

6

that Cobb and Upshaw are in a conspiracy together to distribute steroids nationwide." Wernet testified he reviewed the search warrant application before it was submitted to the judge, he could have corrected any information he thought was incorrect, and all of the information contained in the application was accurate, to the best of his knowledge. Tr. pp. 15-16; p. 29, lines 1-18. However, Wernet further testified that at the time the warrant was obtained, he was not aware of any information indicating Cobb and Upshaw were accomplices in steroid trafficking. Tr. p. 21, lines 2-12. Klunder, on the other hand, testified he received the information that Cobb and Upshaw were working together to distribute steroids from Wernet. Tr. pp. 38-39, 47-48; *see also* Tr. p. 60, lines 4-16.

The court concludes Klunder's statement in the affidavit that the Task Force had information indicating Cobb was "an accomplice of Joseph Randall Upshaw" is false. The statement that officers "believed" Cobb and Upshaw were co-conspirators in distributing steroids nationwide is a closer call, given that it sets forth the officers' "belief," which is a subjective determination. However, because the statement is offered in support of a search warrant application, and the belief is based on the other partially-false information in the warrant, the court also finds this statement to be false. The consequences of including these false statements in the warrant application are addressed later in this opinion.

The next statement at issue in the affidavit is Klunder's representation that Yeats had identified his middleman as Clinton Barger, of Clarksville, Tennessee. Wernet testified that when he received the call from Meckall on May 2, 2006, Meckall told him Yeats had stated "he used a middleman that he met at a local gym there to arrange for the steroids to be delivered," and Yeats identified the middleman as Clinton Barger, from Nashville, Tennessee. Tr. p. 13, lines 11-21; p. 28, lines 9-13. Wernet stated he took this information "next

7

door to Klunder's office and relayed it to him where he was going to type the search warrant up." Tr. p. 14, lines 21-24. The evidence indicates Meckall has stated Yeats never identified his middleman by name, and Meckall maintains he did not tell Wernet the name of any middleman. Wernet disputes this, stating it was his "understanding in talking to [Meckall] that the middleman was Clinton Barger." Tr. p. 23, lines 1-2; *see* Tr. p. 29 lines 19-24. Wernet made the connection between the name Clinton Barger and the return address on the piece of mail sent from Tennessee to "GC Nutrition" at Cobb's address. Wernet acknowledged that if Meckall did not provide the name Clinton Barger as Yeats's middleman, there was no evidence to tie Yeats to Cobb at the time of the search warrant application. Tr. pp. 23-24.

Klunder testified he prepared the search warrant affidavit based on information provided to him by Wernet. Klunder had never spoken with Meckall prior to preparing the warrant affidavit. He called Meckall about a week after the search of Cobb's residence, and Meckall stated Yeats "had spoken of a middleman, but had not given [Barger's] name." Tr. p. 44, lines 1-2. Klunder stated he was surprised when Meckall told him Yeats had not mentioned a name, but Meckall continued to maintain that no name was given. Tr. pp. 52-53. Klunder wrote a memo to Assistant U.S. Attorney C.J. Williams in which he relayed what he termed to be a miscommunication between himself and Wernet concerning the identity of Yeats's middleman. *See* Gov't Ex. 2. Klunder later reviewed police reports from the Tennessee officers' interviews with Yeats. Klunder stated the reports contained no mention of Clinton Barger, or of any middleman at all, nor did they mention that Yeats had met the middleman at a gym. Tr. p. 59, lines 1-4, 10-17.

Klunder indicated officers had not sought a search warrant for Cobb's residence previously because they had not located a connection between Cobb and Upshaw. The

8

additional information that Clinton Barger was Yeats's middleman, coupled with the letter from Barger to GC Nutrition at Cobb's address, provided the link they needed to support the search warrant application. *See* Tr. pp. 49-50. Klunder testified that other than what Wernet told him about the connection between Yeats and Barger, he had no other information to connect the two. Tr. p. 61, lines 5-9.

The court finds Meckall did not provide Clinton Barger's name to Wernet. Rather, the court finds Wernet arrived, on his own, at the conclusion that Barger was Yeats's middleman. Wernet testified he was aware of Clinton Barger's name before he ever spoke with Meckall, due to Barger's return address on the piece of mail sent to GC Nutrition at Cobb's address. Tr. pp. 35-36. Whether intentionally or recklessly, Wernet jumped to the conclusion that Barger was Yeats's middleman for his purchase of steroids from an Iowa source. As a result, the information in the warrant application indicating Barger was "the subject that Yeats stated he pays to have the steroids sent," and the conclusory statement, "It is believed that this package [from Barger to GC Nutrition] contained the cash for a steroid transaction," was false.

Report and Recommendation at pp. 2-10 (footnotes omitted). Upon review of the record, the court adopts all of Judge Zoss's factual findings that have not been objected to by the government.

## II. LEGAL ANALYSIS

### A. Standard Of Review

Pursuant to statute, this court's standard of review for a magistrate judge's report and recommendation is as follows:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the

Case 3:06-cr-03071-MWB   Document 68   Filed 05/16/07   Page 9 of 24

> court may accept, reject, or modify, in whole or in part, the
> findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1).  Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's report and recommendation on dispositive motions and prisoner petitions, where objections are made, as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).

The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required.  *See, e.g., Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied*, 519 U.S. 860 (1996); *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (citing *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994)); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*).  As noted above, the government has filed objections to  Judge Zoss's Report and Recommendation. The court, therefore, undertakes the necessary review of Judge Zoss's recommended disposition of defendant Cobb's motion to suppress.

10

### B. Objections To Findings Of Fact

#### 1. Connection between Barger and Yeats's middleman

The government initially objects to Judge Zoss's finding that "Wernet made the connection between the name Clinton Barger and the return address on the piece of mail sent from Tennessee to 'GC Nutrition' at Cobb's address." Report and Recommendation at 8. The government argues that this factual finding is erroneous because Wernet testified at the suppression hearing that he understood Meckall to have told him that Yeats told Meckall that Clinton Barger was Yeats's middleman. The government argues that Meckall's subsequent statement to Klunder that Yeats did not identify his middleman should carry little weight because it was made a week after Meckall spoke to Wernet and is hearsay.

The court notes that Judge Zoss was able to view and assess the credibility of both Klunder and Wernet at the time of the suppression hearing. Clearly, Judge Zoss did not find Wernet's testimony to be credible on this point. The court concurs in this assessment and finds Wernet's testimony that Meckall told him that Yeats had identified Clinton Barger as his middleman to be unbelievable given the record. Klunder testified that he requested and received the police reports from the Nashville Police Department concerning their search of Yeats's residence. Klunder found no mention of Clinton Barger in those records. It is unfathomable to believe that if Yeats had in fact told Meckall that an individual by the name of Clinton Barger was his middleman in obtaining steroids that that fact would not have been recorded in a police report. Such information would clearly be a segue into further investigations of illegal steroid distribution. Moreover, if Meckall had in fact learned the name of Yeats's middleman, it is unlikely that he would have forgotten such a crucial piece of information in only a week. Finally, the government has offered no reason why Meckall would subsequently deny learning of Yeats's middleman's identity.

11

Thus, the court finds Wernet's testimony that he was told by Meckall that Yeats had identified Clinton Barger as his middleman to not be credible given the record. Therefore, this objection is overruled.

### 2. Whether Wernet's action was intentional

The government also objects to Judge Zoss's factual finding that: "Whether intentionally or recklessly, Wernet jumped to the conclusion that Barger was Yeats's middleman for his purchase of steroids from an Iowa source." Report and Recommendation at 9. Specifically, the government argues that there is no evidence to support even an inference that Wernet intentionally provided false information. Judge Zoss did not find that Wernet's actions were intentional, but instead determined that they were made with "reckless disregard for the truth." Report and Recommendation at 13. The court concludes from this that Judge Zoss's use of the term "intentional" was not an actual, factual finding but merely a description of the two alternative means by which Wernet reached the conclusion that Barger was Yeats's middleman. Therefore, this objection is also overruled.

### 3. Whether Wernet acted recklessly

The government next objects to Judge Zoss's factual finding that Wernet's conclusion that Barger was Yeats's middleman was made recklessly. The Eighth Circuit Court of Appeals has "acknowledged that recklessness may be 'inferred from the fact of omission of information from an affidavit . . . when the material omitted would have been 'clearly critical' to the finding of probable cause.'" *United States v. Williams*, 477 F.3d 554, 559 (8th Cir. 2007) (quoting *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986); *see Hunter v. Namanny*, 219 F.3d 825, 830 (8th Cir. 2000) ("Where, as here, the allegedly omitted information would have been clearly critical to the probable cause determination, recklessness may be inferred."); *United States v. Ozar*, 50 F.3d 1440, 1445

12

(8th Cir. 1995) (quoting *Reivich*, 793 F.2d at 961); *see also United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993) (noting that police officers act with reckless disregard if they knowingly withhold facts that "[a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know."). Similarly, other federal circuit courts of appeals have held that courts may infer recklessness "from circumstances evincing obvious reasons to doubt the veracity of the allegations." *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001); *accord United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002); *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984), *cert. denied*, 470 U.S. 1003 (1985)).

As noted above, the court has found Wernet's testimony that he was told by Meckall that Yeats had identified Clinton Barger as his middleman to not be credible given the record. The government suggests that Wernet misunderstood Meckall to say that Barger was Yeats's middleman due to Meckall's thick southern drawl and, at worst, negligently included this statement in the search warrant application. However, the government has not offered any explanation of how Wernet could have misunderstood Meckall to say that he was told by Yeats that Clinton Barger was the middleman he used in obtaining steroids when Yeats, in fact, did not divulge who was acting as his middleman. The government's explanation would ring more true if Yeats had told Meckall that he was using a middleman to obtain steroids, revealed the name of that person, and that person had a name which sounded substantially similar to Clinton Barger, such as Milton Barber. The inclusion of the false information that Barger was Yeats's middleman was clearly critical to the finding of probable cause to search defendant Cobb's residence because it provided the lynchpin necessary to tie defendant Cobb to Upshaw and the unlawful distribution of steroids. Thus, under the circumstances of this case, the court finds that recklessness may be

13

inferred from Wernet's inclusion of materially false information in the search warrant application. Therefore, this objection is also overruled.

### 4. Connection between Cobb, Upshaw and Barger

The government next objects to Judge Zoss's factual finding that "the officers actually knew of no connection between Cobb and Upshaw, or between Upshaw and Barger." Report and Recommendation at 11. The government argues that, even without Yeats's identification of Barger as his middleman, sufficient circumstantial evidence exists to conclude that there was a connection between Cobb and Upshaw, and Upshaw and Barger. In drawing this conclusion the government points to the following facts: the anonymous letter informing the police that Cobb was involved in the distribution of steroids; law enforcement officers learning that Upshaw was involved in wiring large sums of money to China, which is a source country for steroids; the mail cover's identifying a letter sent to Cobb's private residence that was addressed to "GC Nutrition" from Clinton Barger in Clarksville, Tennessee, which is located near Nashville, Tennessee; law enforcement officers' knowledge that Cobb was employed outside his home and there were no outward appearances that Cobb was operating a business out of his home; that Upshaw was caught sending steroids to Yeats, a customer in Nashville; and, that Yeats admits using a middleman and obtaining steroids previously from his source in Iowa.

Upon de novo review of the record, the court concludes that the circumstantial evidence in this case is insufficient to permit the court to conclude that there was a connection between Cobb and Upshaw, and Upshaw and Barger. First, the court notes that the anonymous letter did not mention that Cobb was involved with Upshaw. The circumstances of Upshaw's wiring large sums of money to China, a known source of steroids, and his subsequently being caught sending steroids to Yeats in Nashville, Tennessee, only establishes Upshaw's involvement in the distribution of steroids, absent

14

something linking Cobb to his activities. The court finds that the mail cover's identifying a letter sent to Cobb's private residence that was addressed to "GC Nutrition" from Barger in Clarksville, Tennessee, does not establish such a link. Although the government asserts that Barger's letter addressed to "GC Nutrition" constitutes circumstantial evidence that Cobb was using "GC Nutrition" as a front for the selling of steroids, the court has difficulty reaching such a sweeping conclusion from a single letter. The flaw here is that there is nothing in the record establishing or even suggesting Barger's involvement in the distribution of steroids at the time the officers sought the search warrant. The court also notes that while Wernet considered "GC Nutrition" to not be a legitimate business concern, that conclusion rested on nothing more than conjecture on his part based on the fact that he had never heard of the company and that the letter was addressed to Cobb's residence. Indeed, Wernet never conducted any research into "GC Nutrition" whatsoever before arriving at his conclusion that it was a front for the sale of steroids. Therefore, this objection is also overruled.

### 5. Corroboration of connection between Cobb and Upshaw

The government further objects to Judge Zoss's finding that: "[t]he only piece of corroboration that bears any relevance at all to the warrant application is the letter from Barger addressed to GC Nutrition at Cobb's address." Report and Recommendation at 12. The government asserts that there was substantial additional evidence that corroborated a connection between Cobb and Upshaw. For the reasons detailed in the section above, upon de novo review of the record, the court concludes that the circumstantial evidence in this case is insufficient to permit the court to conclude that there was a connection between Cobb and Upshaw. Therefore, this objection is also overruled.

### 6.      Belief that Cobb and Upshaw were accomplices

The government's final factual objection is to Judge Zoss's finding that Klunder's statement in the search warrant affidavit, that the officers believed Cobb and Upshaw were co-conspirators in distributing steroids nationwide, was false.      Report and Recommendation at 7.   The government argues that the evidence was sufficient for a reasonable, experienced law enforcement officer to conclude that Cobb and Upshaw were involved as accomplices in the distribution of steroids.   As Judge Zoss observed in his Report and Recommendation, "[t]he statement that officers 'believed' Cobb and Upshaw were co-conspirators in distributing steroids nationwide is a closer call, given that it sets forth the officers' 'belief,' which is a subjective determination."      Report and Recommendation at 7.   Although the court concludes that both Wernet and Klunder subjectively "believed" that Cobb and Upshaw were co-conspirators in distributing steroids nationwide, these beliefs were both based on an underlying false premise, namely that Meckall supposedly told Wernet that Yeats had identified Clinton Barger as his middleman.  Although Meckall did tell Wernet that Yeats had disclosed to him that he had purchased steroids through a middleman, he never identified Clinton Barger as being that middleman.   Therefore, while the court concludes that both Wernet and Klunder subjectively "believed" that Cobb and Upshaw were co-conspirators in the distribution of steroids, this belief was not objectively reasonable.   Therefore, this objection is also overruled.

### C.  Objections To Legal Conclusions

### 1.      Substantial preliminary showing

The government objects to Judge Zoss's conclusion that:  "Cobb made the requisite showing to warrant a *Franks* hearing."   Report and Recommendation at 11.   The

Case 3:06-cr-03071-MWB   Document 68   Filed 05/16/07   Page 16 of 24

government argues that defendant Cobb failed to show that the inaccurate information contained in the affidavit was knowingly and intentionally false, or made with reckless disregard for the truth. Thus, the legal conclusion at issue in this case is Judge Zoss's recommended application of *Franks v. Delaware*, 438 U.S. 154 (1978), in which the United States Supreme Court set out a limited exception to the presumptive validity of an affidavit supporting a search warrant application. Under the *Franks* decision, if the government intentionally includes material false statements in its warrant affidavits, or includes material false statements with reckless disregard for the truth, that is the legal equivalent of intentional falsehood, the reviewing court must set aside the false statements and then review the remaining portions of the warrant application to determine if what remains is sufficient to establish probable cause. *Id.* at 156; *see Williams*, 477 F.3d at 558; *United States v. Davis*, 471 F.3d 938, 946 (8th Cir. 2006); *United States v. Sandoval-Rodriguez*, 452 F.3d 984, 988 (8th Cir. 2006); *United States v. Pucket*, 466 F.3d 626, 629 (8th Cir. 2006); *United States v. Roberson*, 439 F.3d 934, 939 (8th Cir.2006); *United States v. Olvey*, 437 F.3d 804, 809 (8th Cir. 2006); *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001); *United States v. Carpenter*, 422 F.3d 738, 745 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1115 (2006); *United States v. Searcy*, 181 F.3d 975, 980 (8th Cir. 1999); *United States v. Ozar*, 50 F.3d 1440, 1443 (8th Cir. 1995); *United States v. Clapp*, 46 F.3d 795, 799 (8th Cir. 1995); *Reivich*, 793 F.2d at 961; *United States v. Garcia*, 785 F.2d 214, 222 (8th Cir.), *cert. denied*, 475 U.S. 1143 (1986). Mere negligence or an innocent mistake are insufficient, by themselves, to void a warrant. *See Franks*, 438 U.S. at 171; *Williams*, 477 F.3d at 557; *Davis*, 471 F.3d at 946; *Puckett*, 466 F.3d at 629; *Carpenter*, 422 F.3d at 745; *Clapp*, 46 F.3d at 799.

The Supreme Court instructed that an evidentiary hearing is not warranted unless defendant makes the following showing:

Case 3:06-cr-03071-MWB   Document 68   Filed 05/16/07   Page 17 of 24

To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Franks*, 438 U.S. at 171. The Eighth Circuit Court of Appeals has further instructed that:

While clear proof of these elements is not required at the stage at which the defendant is demonstrating an entitlement to an evidentiary hearing, *United States v. Owens*, 882 F.2d 1493, 1498 (10th Cir. 1989), the defendant still must make a "substantial preliminary showing" comprised of specific allegations along with supporting affidavits or similarly reliable statements. *Cf. Franks*, 438 U.S. at 171, 98 S. Ct. 2674 (describing the showing requirements for allegedly false statements in warrant affidavits). Because "[t]here is . . . a presumption of validity with respect to the affidavit supporting the search warrant[,t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.*

Case 3:06-cr-03071-MWB   Document 68   Filed 05/16/07   Page 18 of 24

> The substantiality requirement is not lightly met. *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987).

*Williams*, 477 F.3d at 557-58.

Here, in support of his motion to suppress and application for *Franks*, defendant Cobb alleged that the affidavit in support of the search warrant application contained the following false statements:

> a. In the statement to officers with the Nashville Police Department, Mr. Yeats admitted to using a middleman to send cash to the Iowa source of steroids, but didn't name any person and specifically did not name Mr. Barger.
> b. Mr. Yeats never told officers with the Nashville Police Department that Mr. Barger collected cash from him and sent it to his source for steroids.
> c. In fact, Mr. Yeats only admitted getting steroids from an Iowa source, paying $3,000.00 on the first occasion and $2,100 on the second occasion.
> d. Officers from Nashville Police Department, in relying [sic] the information, did not mention Mr. Barger's name to Task Force Officer Wernet.

Motion To Suppress And Application For *Franks* Hearing at 2. In its response and supplement to its response, the government admitted that, when Klunder spoke with a Nashville police officer a week after the search, that the Nashville officer indicated that, while Yeats admitted to his use of a middleman, he did not provide a name of the middleman. Government's Resistance To Defendant's Motion To Suppress at 2. The government also attached a letter from Klunder in which he offered his explanation for what transpired:

> In regards to the Cobb search warrant. I wanted to let you know about a miscommunication that I had when writing the warrant. When Logan [Wernet] talked to the Investigators in Nashville, TN, he told me about the conversation. I then wrote the search warrant for Cobb's house after talking to

19

Logan.  He told me that the Investigators interviewed Forrest Yeats in Tennessee and that Yeats said he uses a middle man to get the steroids through.  I thought that Logan said that Yeats told them about Clinton Barger, of Clarksville, TN.  During the conversation, I thought that Logan told me Yeats pays Barger, and put that in my search warrant affidavit.

After about a week or so, I talked to the Sgt in Nashville myself.  He told me that Yeats said he uses a middle man, but did not give them a name.  My search warrant affidavit states that Yeats gave up Barger as the middle man, which matched a mail cover package coming to Cobb's house.  At the time of the warrant, I thought this was what happened.  I'm not sure how this was miscommunicated between Logan and I.

Klunder Letter at 1.

Thus, here it is uncontested that false information was included in the affidavit in support of the search warrant application.  Moreover, the inclusion of the false information was highly critical to the finding of probable cause to search defendant Cobb's residence because the false information provided the sole connection between defendant Cobb and Upshaw.  Finally, the government's only explanation for the inclusion of the false material in the affidavit in support of the search warrant application was that a "miscommunication" had occurred between law enforcement officers.  However, the government has not offered any explanation of how Meckall "miscommunicated" that he was told by Yeats that Clinton Barger was his steroid middleman.  Under such circumstances, the court concludes that recklessness may be inferred here because the circumstances evince obvious reasons to doubt the veracity of the allegations.  *See Whitley*, 249 F.3d at 621; *Ranney*, 298 F.3d at 78; *Williams*, 737 F.2d at 602.    Thus, the court concludes that defendant Cobb made a substantial preliminary showing sufficient to justify a *Franks* hearing.  Therefore, this objection is also overruled.

### 2. *Reckless disregard for the truth*

The government objects to Judge Zoss's conclusion that: "the officers' misstatements regarding an alleged connection between Cobb and Upshaw, and between Cobb and Barger, were made with reckless disregard for the truth." Report and Recommendation at 13. The government recognizes that this objection is identical to its previous factual objection discussed above in section II(B)(3). For the reasons discussed above, the court concludes that Wernet's actions, specifically including in the affidavit in support of the search warrant application the false information that Meckall told Wernet that Yeats had identified Clinton Barger as his middleman, were in reckless disregard for the truth. Therefore, this objection is also overruled.

### 3. *Probable cause absent the false information*

The government's final objection is that defendant Cobb has not established the second prong of the *Franks* test, namely that "the allegedly false information is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. The government argues that, in this case, the search warrant application contained sufficient information, even absent the false information, that it would not have been impossible to find probable cause.

As the Eighth Circuit observed in *Davis*:

> Probable cause to issue a search warrant exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a "fair probability that contraband or evidence of" criminal activity will be found in the particular place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed.2d 527 (1983); *see Clapp*, 46 F.3d at 801. Probable cause determinations are made in light of the totality of the circumstances. *Clapp*, 46 F.3d at 801.

*Davis*, 471 F.3d at 946; *accord United States v. Jansen*, 470 F.3d 762, 766 (8th Cir. 2006) ("Probable cause exists if, under the totality of the circumstances, the warrant shows facts

Case 3:06-cr-03071-MWB   Document 68   Filed 05/16/07   Page 21 of 24

sufficient to create a fair probability that evidence of a crime will be found in the place to be searched."); *Carpenter*, 422 F.3d at 744 ("Probable cause exists, if under the totality of the circumstances, a showing of facts can be made "'sufficient to create a fair probability that evidence of a crime will be found in the place to be searched.'"") (quoting *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002)).

The search warrant application here, sans the erroneous information, only contains the following information:  that the police received an anonymous letter in which Cobb was identified as being involved in the distribution of steroids and identifying some internet web sites where he was transacting business; that a mail cover was ordered  for Cobb's residence; that as a result of the mail cover the police learned that on March 20, 2006, a letter was received at Cobb's residence which was addressed to "GC Nutrition" with a return address from Clinton Barger of Clarksville, Tennessee; that on May 1, 2006, the police were called to the United Parcel Service ("UPS") in Mason City, Iowa, to investigate a package that was being sent by Joe Upshaw; the package had been opened by employees of UPS and inside were found four shrink wrapped packages of suspected steroids; that the package was being sent to Nashville, Tennessee; that the police made contact with law enforcement in Tennessee and a controlled delivery was set up through UPS; that on May 2, 2006, law enforcement in Nashville informed the Mason City police that the controlled delivery had been completed and they were conducting a search warrant; that a law enforcement officer in Tennessee told Investigator Logan Wernet that they interviewed the male subject and he told them that Forrest Yeats, a male in Tennessee admitted to having the steroids delivered and was paying over $2,000 for them; that Yeats told the investigators that he uses a middle man; that the middle man collects the cash from Yeats and sends it to his source of the steroids, and then the steroids are sent to Yeats; and, that on May 2, 2006, the task force executed a search warrant at Upshaw's residence

22

and located several items consistent with the sale of steroids, including items similar to what were sent through UPS on May 1, 2006.

The court concludes that when the false information is dedacted from the search warrant application, the search warrant application fails to show facts sufficient to create a probability that evidence of a crime would be found at defendant Cobb's residence. The court notes that the only item directly implicating defendant Cobb in the distribution of steroids, the anonymous letter to the police, was wholly uncorroborated by the police. Under such circumstances, the anonymous tip was clearly insufficient to provide probable cause to search defendant Cobb's residence. *See Florida v. J.L.*, 529 U.S. 266, 268 (2000) (holding that an anonymous tip without more is insufficient to justify a police officer's stop and frisk of an individual); *Illinois v. Gates*, 462 U.S. 213, 227 (1983) (noting that an anonymous tip, standing alone without more, does not constitute probable cause); *United States v. Wells*, 223 F.3d 835 (8th Cir. 2000) ("An anonymous tip, however, is insufficient in itself to support a finding of probable cause."); *Namanny*, 219 F.3d at 830 (holding search warrant not supported by probable cause where surveillance failed to corroborate the only factual claim made by anonymous tipster and police officer's "bare suspicion" did not constitute corroboration to support issuance of search warrant); *United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991) (holding no probable cause to issue warrant where anonymous tip was corroborated only with respect to innocuous details); *see also United States v. Ritter*, 416 F.3d 256, 272-73 (3rd Cir. 2005) ("Where the anonymous tip contains only 'bare bones' allegations of illegality, however, the police have no basis on which to evaluate the creditability of the tip's illegal content by corroborating the tip's predictions of the target's future innocent actions. Such conclusory anonymous tips do not amount to reasonable suspicion, much less probable cause, and police may not base a seizure or search on them."); *United States v. Helton*, 314 F.3d 812,

Case 3:06-cr-03071-MWB   Document 68   Filed 05/16/07   Page 23 of 24

819 (6th Cir. 2003) (explaining that anonymous tips, unlike information provided by a confidential informant who has a proven track record of reliability, "demand more stringent scrutiny of their veracity, reliability, and basis of knowledge. . . ."). Likewise, the mere fact that the mail cover resulted in the discovery of a letter being sent to Cobb's residence which was addressed to "GC Nutrition" with a return address from Clinton Barger of Clarksville, Tennessee, while certainly arousing the suspicions of officers Wernet and Klunder, did not corroborate the anonymous tip or suggest that Cobb was distributing steroids. Finally, the intercepted shipment of steroids from Upshaw to Yeats can be accorded no significance since nothing in the search warrant application ties Upshaw or Yeats to Cobb. Thus, the court concludes that defendant Cobb has established the second prong of the *Franks* test, that is "the allegedly false information is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. Therefore, this objection is also overruled.

### III. CONCLUSION

Therefore, for the reasons set forth above, the court, upon a *de novo* review of the record, accepts Judge Zoss's Report and Recommendation and **grants** defendant Cobb's motion to suppress.

**IT IS SO ORDERED.**

**DATED** this 16th day of May, 2007.

_Mark W. Bennett_
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA